Submitted on record and briefs January 17, affirmed December 2, 1992

In the Matter of
Anthony Fikes, a Child.

## STATE ex rel JUVENILE DEPARTMENT
## OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Anthony FIKES,
*Appellant.*

(83306; CA A66689)

842 P2d 807

Vicki R. Vernon, Portland, filed the brief for appellant.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Yuanxing Chen, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DEITS, J.

**DEITS, J.**

Child appeals from a juvenile court order finding him to be within the court's jurisdiction because of conduct that would constitute the crime of possession of a controlled substance if committed by an adult. ORS 475.992(4). He assigns error to the court's denial of his motion to suppress evidence obtained when the police searched him after an allegedly unlawful stop. On *de novo* review, ORS 419.561(4), we affirm.

The facts are not in dispute. While Officers Hendricks and Kruger were patrolling a North Portland neighborhood near Unthank Park at approximately 10 p.m., they noticed child standing on a sidewalk with a group of five or six other youths. Suspecting drug activity, the officers parked their patrol car on the other side of the block, got out of the car and approached the group on foot from opposite sides "to surprise the people, take them off guard." Hendricks approached child from behind, startling him, and noticed that child was visibly nervous as Hendricks told him of neighbors' complaints of drug dealing. Hendricks then asked for permission to search child. Child responded, "Yeah, go ahead." Child did not notice that Kruger was also there until approximately two minutes after Hendricks had begun his search. While searching child's pockets, Hendricks found $309 in cash and a canvas pouch. He asked for permission to open the pouch, which child granted. The pouch contained a white residue that Hendricks testified appeared to be cocaine.

Child filed a motion to suppress the evidence obtained in the search, arguing that the search was unlawful because it followed an unlawful stop and because his consent to search was not validly obtained. The trial court denied the motion, concluding that there was no stop and that child knowingly and voluntarily gave Hendricks consent to search:

"Based on the testimony of the officers and some extremely candid testimony by [child], I am finding that this was not a stop. I think the officers had every right to make the inquiry. And even considering—and it's hard to—the reasonable person standard is hard when we're dealing with a juvenile. [Child] has testified, so the record at least shows some background for [child], some experience level for [child]

and some maturity level for [child] that I guess all fit into that reasonable person.

"And I will rule apart from the stop issue that in either scenario that this is a valid — that it was a valid consent. I find it, after having heard [child], real hard to imagine that [child's] free will was overborne by these officers. I don't think that happened."

■ Child argues that his encounter with Hendricks was a stop and, therefore, a seizure of his person.[1] The state contends that the encounter between child and Hendricks, at least initially, was mere conversation and, consequently, not a seizure. In *State v. Holmes*, 311 Or 400, 813 P2d 28 (1991), the Supreme Court identified three general categories of encounters between the police and citizens and discussed whether each of the encounters constituted a "seizure" of the person under Article I, section 9:

"First, a police-citizen encounter without any restraint of liberty (e.g., mere conversation, a non-coercive encounter) is not a 'seizure' and, therefore, requires no justification. Second, a 'seizure' of a person occurs when a police officer temporarily restrains a person's liberty (a 'stop' under ORS 131.605(5)), justified by reasonable suspicion of the citizen's criminal activity. Third, a 'seizure' of a person occurs upon an arrest, justified by probable cause to believe that the person arrested has committed a crime." 311 Or at 407. (Citations and footnotes omitted.)

However, as the court noted in *State v. Gerrish*, 315 Or 506, 510, 815 P2d 1244 (1991), the categories are guidelines and are not exhaustive or conclusive as to whether a seizure has occurred.

In *Holmes*, the court provided guidance as to the degree of intrusiveness necessary to constitute a seizure. It explained that a seizure occurs (1) when an officer "intentionally and significantly restricts, interferes with, or otherwise deprives" a person of his liberty or freedom of movement; or (2) when an individual believes that that has occurred and his belief is "objectively reasonable in the circumstances." *State v. Holmes, supra*, 311 Or at 409. Having

---

[1] A "stop" under ORS 131.615, as defined in ORS 131.605(5), is a "seizure" under Article I, section 9, of the Oregon Constitution and under the Fourth Amendment. *State v. Holmes, supra*, 311 Or at 408 n 18.

stated the standards, the court recognized that the "test will seem rather vague when unadorned by judicial interpretation based upon specific fact situations" and will require an analysis of the totality of the circumstances of each case. 311 Or at 408.

In this case, Hendricks approached child and told him of neighborhood complaints of drug activity and sales. Although child was surprised by Hendricks, neither Hendricks nor the other officer, Kruger, took any action that significantly restricted, interfered with or otherwise deprived child of his liberty or freedom of movement. Child's encounter involved only Hendricks, and there was no weapon drawn or physical contact that could be interpreted as a restriction on child's liberty. He was not told that he could not leave. He was neither forced to alter his course of conduct nor summoned away from a task. *See State v. Allen*, 112 Or App 70, 826 P2d 127, *rev den* 314 Or 176 (1992); *State v. Johnson*, 105 Or App 587, 590, 805 P2d 747 (1991); *State v. Canape*, 46 Or App 453, 458, 611 P2d 1190 (1980). Under the totality of the circumstances, we conclude, that during the initial encounter between child and Hendricks, there was not any *significant* interference with child's liberty.

The second part of the inquiry in *Holmes* is whether a reasonable person would have perceived an interference with his freedom. Child did not testify that he did not think that he was free to leave. However, even assuming that child believed that he was not free to leave, we conclude that that belief was not objectively reasonable under the circumstances. As explained in *State v. Holmes, supra*, 311 Or at 410:

> "Under these 'seizure' standards, law enforcement officers remain free to approach persons on the street or in public places, seek their cooperation or assistance, request or impart information, or question them without being called upon to articulate a certain level of suspicion in justification if a particular encounter proves fruitful. A street or public place encounter does not amount to an Article I, section 9 'seizure' merely because the encounter may involve inconvenience or annoyance for the citizen and the other party to the encounter is known to be a law enforcement officer. Even physical contact does not transform the encounter into a 'seizure' if it is a normal means of attracting a person's

attention (e.g., policeman tapping citizen on the shoulder at the outset to get a citizen's attention). Rather, the encounter is a 'seizure' of a person only if the officer engages in conduct significantly beyond that accepted in ordinary social intercourse. The pivotal factor is whether the officer, *even if making inquiries a private citizen would not,* has *otherwise* conducted himself in a manner that would be perceived as a nonoffensive contact if it had occurred between two ordinary citizens.'' (Citations omitted; emphasis supplied.)

Although Hendricks' request to search was not an inquiry that one private citizen would usually make to another, he otherwise conducted himself in a manner that would be perceived as a nonoffensive contact between two citizens. Although he was wearing a uniform, Hendricks took no coercive action of any kind.

Child relies on *State v. Anfield,* 95 Or App 567, 770 P2d 919 (1989), and *State v. Tetro,* 98 Or App 492, 779 P2d 1080 (1989), to support his argument that a reasonable person in his position would not have felt free to leave. The cases do not support his position. In *Anfield,* we held that a reasonable person would not have felt free to leave when two uniformed police officers, who had no reasonable suspicion that the defendant had committed a crime, "shined a spotlight on him and then physically blocked his movement forward or backward." 95 Or App at 571. As noted above, defendant here was only aware of one officer's presence, and his movement was not restricted.

In *Tetro,* an officer parked his car behind the defendant's and approached the car on foot. He asked the defendant and his passenger what they were doing and then asked the passenger what was in his pocket. After the passenger invited the officer to look, the officer asked the passenger to step out of the car. We held that there was no stop before the passenger was asked to step out of the car, because the officer did not make a show of authority that would lead a reasonable person to conclude he was not free to leave. 98 Or App at 495. Hendricks' approach and recitation to child of the neighbors' concerns about drug dealing was similar to the officer in *Tetro* asking what the defendant and his passenger were doing. We conclude that, under the totality of the circumstances, the encounter between Hendricks and child was not an unlawful

stop under ORS 131.615 or a seizure under Article I, section 9.

■■ We also conclude that child was not "seized" for the purposes of the Fourth Amendment. A Fourth Amendment seizure occurs when, considering all the facts and circumstances, including what a reasonable person in the defendant's position would believe, that the person is not free to leave because of a "show of authority." *State v. Gerrish, supra*, 311 Or at 517. For the reasons discussed above, we conclude that, under the totality of the circumstances here, child was not constrained by a show of authority and that his encounter with Hendricks was not a seizure.

■■ Child next argues that the trial court erred in denying his motion to suppress because his consent to search was involuntary. To determine voluntariness, we look to the totality of the facts and circumstances to demonstrate whether a person's consent was a result of free will or coercion, whether express or implied. *State v. Wolfe*, 295 Or 567, 572, 669 P2d 320 (1983). The state has the burden to prove voluntariness by a preponderance of the evidence. *State v. Stevens*, 311 Or 119, 137, 806 P2d 92 (1991). Here, child admits that he consented to the search. However, he also points to his testimony that he was accustomed to random police searches whenever he was with his friends in that particular neighborhood and believed that, no matter what he had said, Hendricks would have searched him:

> "[T]hey would just search anyway, you know. Like the police in Portland, they got this new thing called suspicion of something. If you say no, they will just probably search you anyway. That's my belief. They do it anyway, searching without even asking sometimes — most of the time, not some- — most of the times, take stuff away from you."

■ After hearing child testify, the trial court found that child was not coerced into giving consent. The court explained that it was relying on child's maturity level and his familiarity and experience dealing with the police. On *de novo* review, a trial court's findings regarding the credibility of a witness are given weight, although they are not binding. *State ex rel Juv. Dept. v. Cruz*, 111 Or App 216, 218, 826 P2d 30 (1992). We give deference here to the trial court's findings regarding child's maturity level and its conclusion that child was not

frightened by the police. We conclude that child's consent was not the product of police coercion, but was voluntarily and knowingly given.

Finally, child contests a search conducted at the juvenile detention center after he was taken into custody. However, child was charged with only one count of possession of a controlled substance and that charge was based on the evidence obtained from the consent search, not from the search at the detention center. Accordingly, it is unnecessary to address this issue.

Affirmed.