Argued and submitted January 29, affirmed October 6, reconsideration denied December 1, petition for review denied December 14, 1993 (318 Or 171)

# STATE OF OREGON,
*Respondent,*

*v.*

# PAUL ALAN GILMORE,
*Appellant.*

## (90-1358M; CA A73154)

860 P2d 882

Dan Maloney, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Robert M. Atkinson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Riggs and Durham, Judges.

DURHAM, J.

## DURHAM, J.

Defendant appeals from a judgment entered after he was found guilty by a jury of unlawful possession of a firearm. ORS 166.250(1)(b).[1] He assigns error to the denial of his motions to suppress the weapon and for a judgment of acquittal. We affirm.

Defendant contends that the court should have suppressed the handgun, arguing that it came to light during an unlawful stop. He also contends there was insufficient evidence to demonstrate that the gun was found in an automobile under his "direction or control," ORS 166.250(1)(b), and, therefore, that the court should have granted his motion for judgment of acquittal.

The facts are undisputed. On August 30, 1991, at 11:30 a.m., defendant and two other people were sitting in defendant's parked pickup truck in a state office parking lot. Sergeant Long told Officer Grow by radio that a person in the vehicle was consuming an alcoholic beverage in violation of a Grants Pass city ordinance. Grow went to the lot to investigate. He found the pickup truck, approached the driver's side of the truck on foot and contacted the people inside. He requested identification from all three people, although he saw no signs of alcohol consumption and no alcoholic beverages. He described the atmosphere surrounding his initial inquiry as "casual." When defendant opened the glove compartment to retrieve his identification, Grow saw a handgun in the glove compartment. He told the occupants to get out of the truck and then seized the handgun. In response to Grow's questions, defendant admitted that he owned the handgun and the truck.

The issue is whether Grow's initial contact with defendant and his request for identification is a "stop." ORS 131.605(5) defines a "stop" as a "temporary restraint of a

---

[1] ORS 166.250(1)(b) provides:

"(1) Except as otherwise provided in this section * * * a person commits the crime of unlawful possession of a firearm if the person knowingly:

"* * * * *

"(b) Carries concealed and readily accessible about the person within any vehicle which is under the person's control or direction any handgun, without having a license to carry such firearm * * *."

person's liberty by a peace officer lawfully present in any place." A "stop," as defined in ORS 131.605(5), is a "seizure" under Article I, section 9, of the Oregon Constitution and under the Fourth Amendment to the United States Constitution. *State v. Holmes*, 311 Or 400, 408 n 18, 813 P2d 28 (1991). A police officer may restrain a person's liberty by physical force or a show of authority. *State v. Warner*, 284 Or 147, 162, 585 P2d 681 (1978). In *State v. Holmes, supra*, the Supreme Court said:

> "[A] 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances." 311 Or at 409.

Each case requires a "fact-specific inquiry into the totality of the circumstances." *State v. Holmes, supra*, 311 Or at 408.

■       We conclude that Grow's request for identification did not significantly interfere with defendant's liberty and that, even if defendant believed that he was not free to leave, that belief was not objectively reasonable under the circumstances. Defendant was sitting in a parked car in daylight. By requesting his identification, Grow did not require defendant to alter his course or restrain him from leaving. Grow did not tell defendant he could not leave. He did not draw a weapon or otherwise coerce defendant to comply with his request. *See State ex rel Juv. Dept. v. Fikes*, 116 Or App 618, 622, 842 P2d 807 (1992); *State v. Calhoun*, 101 Or App 622, 625, 792 P2d 1223 (1990); *State v. Jackson*, 91 Or App 425, 428, 755 P2d 732, *rev den* 306 Or 661 (1988). The fact that Grow was in uniform does not elevate the request for identification under these circumstances to a significant restriction on defendant's liberty. Defendant was not stopped when he opened the glove compartment.[2]

---

[2] Defendant relies on a sentence in *State v. Tourtillott*, 289 Or 845, 868, 618 P2d 423 (1980), *cert den* 451 US 972 (1981):

> "Ours is not a society where police can stop any citizen and require the production of an 'identification card' without reason."

That statement is inapplicable here, because Grow did not stop defendant.

Other cases support our conclusion. In *State ex rel Juv. Dept. v. Fikes, supra,* an officer approached the child defendant and informed him of neighborhood complaints of drug activity. The officer asked the child for permission to search him. On appeal, the child argued that he was unlawfully stopped when the officer asked to search. We held that the officer's action did not significantly interfere with the child's liberty and that, even if the child believed he was not free to leave, that belief would not be objectively reasonable under the circumstances:

> "Although [the] request to search was not an inquiry that one private citizen would usually make to another, [the officer] otherwise conducted himself in a manner that would be perceived as a nonoffensive contact between two citizens. Although he was wearing a uniform, [the officer] took no coercive action of any kind." 116 Or App at 623.

In *State v. Underhill,* 120 Or App 584, 853 P2d 847 (1993), we held that, despite the absence of a reasonable suspicion of wrongdoing, a police officer's request for the defendant's full name, date of birth and social security number for the purpose of running a status check did not constitute a stop. We said:

> "[U]nless there is significant restriction of an individual's liberty by 'conduct significantly beyond that accepted in ordinary social intercourse' by an 'objectively reasonable' person, an officer may inquire for whatever reason the officer wishes and may make whatever use of the information the officer chooses." 120 Or App at 589.[3]

The request for identification in this case is analogous to the request to search in *Fikes* and the request for information in *Underhill.* Although it differed from ordinary social conversation, it was not coercive and did not significantly interfere with defendant's liberty. The trial court did not err in denying the motion to suppress.

■■ Defendant's second assignment of error challenges the trial court's denial of his motion for judgment of acquittal.

---

[3] *See also State v. Hanna,* 52 Or App 503, 628 P2d 1246, *rev den* 291 Or 662 (1981), where we held that the defendant was not stopped when he approached the officer's car in response to a request from the officer, and the officer politely asked for identification.

Because defendant was convicted at trial, we view the evidence in the light most favorable to the state. *State v. Rose*, 311 Or 274, 276, 810 P2d 839 (1991). Defendant testified that the vehicle belonged to him and that, because he does not drive, he has someone drive for him. The jury could reasonably infer that defendant had control of the vehicle.

Affirmed.