Argued and submitted May 23, affirmed September 6, 1995

# STATE OF OREGON,
*Respondent,*

*v.*

# PENNY CRYSTAL WARNER,
*Appellant.*

## (94CR0775; CA A85712)

901 P2d 940

Steven V. Humber, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

David B. Thompson, Assistant Attorney General, argued the cause for respondent. On the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Robert B. Rocklin, Assistant Attorney General.

Before Warren, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Defendant appeals her conviction, after a trial on stipulated facts, for possession of a controlled substance, ORS 475.992, assigning error to the trial court's denial of her motion to suppress. We affirm.

On February 15, 1994, Officer Oswald was patrolling Highway 101 in Coos County. He was wearing a uniform and driving in a marked patrol car when he noticed a car parked "well off the highway" in what he described as a remote area. The car was backed up against a gate and faced the highway. Oswald testified that there had been "a lot of problems" with people parking off the highway and taking narcotics.

Oswald saw defendant in the driver's seat and a passenger next to defendant. He testified that he saw defendant make quick and furtive movements, and that he saw her reach to the center of the car, dip her right shoulder down and lean to the right. Oswald testified that defendant "appeared to be hiding something" and watching him as he drove nearby. Oswald then parked in front and to the left of defendant's car. Oswald never turned on his patrol lights.

Oswald left his car and approached defendant, who appeared "hyper" and nervous. Her eyes were bloodshot, glassy and she had enlarged pupils, characteristics, according to Oswald, that are consistent with recent stimulant use. At that point, Oswald asked defendant for identification. As defendant searched her purse for identification, Oswald saw a tin can inside the car "which is similar to the container that we look for narcotics." Oswald asked if he could look in the container, and defendant agreed. Defendant first opened the container, checked its contents, and then gave it to Oswald. Oswald asked defendant if she had emptied the container, and she did not respond. Oswald asked defendant to get out of the car. She did, putting her purse on the trunk. While standing outside the car, Oswald noticed marijuana seeds and bindles in the car. He searched defendant's purse and found methamphetamine and related paraphernalia.[1]

Oswald arrested defendant, searched her car and found additional evidence of drug use. Defendant was

---

[1] Defendant does not challenge the lawfulness of the search of the purse.

charged with possession of a controlled substance, ORS 475.992, and she moved to suppress all evidence on the ground that she was unlawfully stopped. The trial court found that defendant's car was already stopped when Oswald approached her to investigate and that Oswald did not block defendant's car or activate his patrol lights. The trial court concluded that Oswald did not effect a "stop" until after his close observation of defendant, at which time he determined that defendant was probably under the influence of a controlled substance. The trial court further concluded that, at that point, Oswald had probable cause to believe that defendant had been driving while under the influence of a controlled substance. The trial court denied defendant's motion to suppress, and, after a trial to the court on stipulated facts, defendant was convicted.

■ Defendant's sole argument on appeal is that she was unlawfully stopped when Oswald

"parked his patrol car in front of defendant's car and in uniform walked up to defendant and defendant's legally parked car and requested defendant's identification."

Defendant argues that that stop was unlawful, because it was not justified by reasonable suspicion of criminal activity. The state argues that Oswald did not effect a "stop" and, in the alternative, that even if there was a stop, it was justified.

■ We accept the trial court's findings of historical fact if there is constitutionally sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We review the trial court's legal determinations for errors of law. *Id.*

■ A "stop" is a temporary restraint, whether by physical force or a show of authority, of a person's liberty by a peace officer lawfully present in any place. ORS 131.605(5); *State v. Warner*, 284 Or 147, 162, 585 P2d 681 (1978). A "stop" is a "seizure" under Article I, section 9, of the Oregon Constitution, *State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991), and must be justified by reasonable suspicion that a crime has been committed. ORS 131.605; ORS 131.615. A person is seized within the meaning of Article I, section 9, of the Oregon Constitution,

"(a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances."

*Holmes*, 311 Or at 409.

Our decision in *State v. Gilmore*, 123 Or App 594, 860 P2d 882, *rev den* 318 Or 171 (1993), illustrates the application of those principles to facts much like those in this case. In *Gilmore*, Officer Grow was told by another officer that a person was sitting in a truck parked in a state lot and was consuming alcohol in violation of a city ordinance. Grow went to the lot and approached the driver's side of the truck. He requested identification from the three people inside the truck. When the defendant opened the glove compartment to retrieve his identification, Grow saw a handgun and seized it. We held that Grow's initial contact with the defendant and his request for the defendant's identification was not a "stop." We reasoned:

"Grow's request for identification did not significantly interfere with defendant's liberty and * * * even if defendant believed that he was not free to leave, that belief was not objectively reasonable under the circumstances. Defendant was sitting in a parked car in daylight. By requesting his identification, Grow did not require defendant to alter his course or restrain him from leaving. Grow did not tell defendant he could not leave. He did not draw a weapon or otherwise coerce defendant to comply with his request. The fact that Grow was in uniform does not elevate the request for identification under these circumstances to a significant restriction on defendant's liberty. Defendant was not stopped when he opened the glove compartment."

*Id.* at 597. (Citations ommitted.)

Similarly, in this case, at the time Oswald requested defendant's identification, defendant was not stopped. When Oswald approached her, defendant was sitting in her parked car in the middle of the day. Oswald did not activate his patrol lights, did not display a weapon and did not tell defendant that she could not leave. Furthermore, Oswald did not require defendant to alter her course, block her car or otherwise restrain her from leaving. All that Oswald did was

approach defendant and ask for her identification. Those actions did not significantly interfere with defendant's liberty. *See also State v. Underhill*, 120 Or App 584, 589, 853 P2d 847, *rev den* 318 Or 26 (1993); *State ex rel Juv. Dept. v. Fikes*, 116 Or App 618, 622, 842 P2d 807 (1992); *State v. Quigley*, 100 Or App 418, 421, 786 P2d 1274 (1990); *State v. Jackson*, 91 Or App 425, 428, 755 P2d 732, *rev den* 306 Or 661 (1988).

The trial court did not err in denying defendant's motion to suppress.

Affirmed.