Argued and submitted November 26, 1997, reversed and remanded April 22, 1998

# STATE OF OREGON,
*Appellant,*

*v.*

# ROBERT VINCENT CARON,
*Respondent.*

(C96-06-34516; CA A95270)

958 P2d 845

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Jesse Wm. Barton, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before Riggs, Presiding Judge, and Landau and Wollheim,* Judges.

RIGGS, P. J.

---

* Wollheim, J., *vice* Leeson, J., resigned.

## RIGGS, P. J.

Defendant was charged with delivery of a controlled substance, ORS 475.992(1), and successfully moved in the trial court to suppress evidence found on his person on the ground that it was obtained after an illegal stop. The state appeals from the trial court's order granting defendant's motion to suppress. Because we hold that defendant was not stopped, we reverse and remand.

We review the trial court's legal conclusions for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We are bound by the court's findings of historical fact provided that they are supported by sufficient evidence in the record. *Id.* Accordingly, we summarize the relevant facts from the court's order except in those places where the order erroneously describes the testimony in the record.

On June 3, 1996, Officer Nelson, a reserve officer with the Portland Police Department, was patrolling on foot in Waterfront Park. The Portland Rose Festival was in progress, and Nelson and his partner were patrolling the area of the Rose Festival Fun Center. Nelson testified that the Fun Center is a high crime area during the festival, with incidents of "gang violence, lots of drug activities and other violent crimes."

At about 4:30 in the afternoon, Nelson observed defendant walking through the Fun Center. Nelson watched defendant for about five minutes, during which time defendant approached a number of passersby and engaged them in brief conversations. On several occasions, according to Nelson, he also saw small objects that looked like pieces of paper changing hands during the conversations. Based upon training and experience, Nelson became concerned that he was witnessing drug transactions. Accordingly, he approached defendant and asked him what he was doing. Defendant replied that he was "just walking around." Nelson asked no further questions, and defendant left the Fun Center area.

At approximately 7:00 that evening, a carnival worker, who identified himself as "Howard," approached

Nelson and his partner. Howard informed them that he had been watching a man who fit defendant's description "walking around selling things," which he believed were "probably drugs," in the area of his concession. Shortly thereafter, defendant approached the area where Nelson and Howard were standing, and Howard confirmed that defendant was the man he had seen. Nelson and his partner then watched defendant for another few minutes, during which time he approached two more passersby and began conversations of the kind Nelson previously had witnessed.

Suspicious, the officers approached defendant. Nelson asked him what he was doing, and defendant replied that he was looking for a job but had not found one. The officer testified that he believed defendant was lying, because he had not seen defendant approach any workers or concessions. The officer further testified that defendant appeared unusually nervous. Nelson then asked if he could see defendant's identification, which defendant provided. As he looked at the identification, Nelson observed that defendant was becoming increasingly agitated. He then asked if defendant was carrying any weapons or drugs. Defendant said he was not, and Nelson asked him whether he would consent to a search. Defendant agreed, but before the officer began to search, defendant said, "I've got weed on me." Nelson asked if he could see it, and defendant handed him a leather pouch containing four baggies of marijuana. Nelson then arrested defendant, and this prosecution followed.

The conversation leading to the discovery of the marijuana took place in Waterfront Park, about 15 feet from Front Street. Nelson's partner, a trainee officer, was standing behind defendant and "observing the area" during the conversation. Nelson testified that the trainee was "more kind of looking around than he was paying attention to—to what was going on."

At trial, the court granted defendant's motion to suppress. The court held that Nelson's second encounter with defendant was an illegal stop, a prohibited seizure of defendant's person without reasonable suspicion of criminal activity in violation of Article I, section 9, of the Oregon Constitution.[1] The state appeals, assigning error first to the court's

---

[1] Article I, section 9, provides, in part:

conclusion that Nelson stopped defendant, and second to its conclusion that the officer lacked reasonable suspicion that a crime had been committed. Because we hold that defendant was not stopped, we do not reach the issue of reasonable suspicion.

Public encounters between citizens and police officers take many forms, not all of which are seizures within the meaning of Article I, section 9. *State v. Holmes*, 311 Or 400, 406-07, 813 P2d 28 (1991). *Holmes* describes three general, nonexclusive categories of citizen-police encounters: (1) an encounter "without any restraint of liberty," also referred to as "mere conversation," which "is not a 'seizure' and, therefore, requires no justification"; (2) a temporary restraint of a person's liberty, or "stop," which is a seizure under Article I, section 9, and must be "justified by reasonable suspicion of the citizen's criminal activity"; and (3) an arrest, which is also a seizure, and must be justified by probable cause. *Id*. at 407. Here, the issue is whether the second encounter between defendant and Nelson was a "stop" or "mere conversation," or, to put it another way, whether Nelson's actions before discovery of the marijuana constituted a seizure of defendant's person.

In determining whether a particular encounter was a seizure, we apply the following test from *Holmes*:

> "We hold that a 'seizure' of a person occurs under Article I, section 9, of the Oregon Constitution (a) if a law enforcement officer intentionally and significantly restricts, interferes with, or otherwise deprives an individual of that individual's liberty or freedom of movement; or (b) whenever an individual believes that (a), above, has occurred and such belief is objectively reasonable in the circumstances." *Id*. at 409-10.

Police officers may "approach persons on the street or in public places, question them, and even accompany them to another location" without seizing them, so long as the deprivation of liberty or freedom of movement described above does not occur or would not appear to a reasonable person to have occurred. *Id*. at 409.

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

■ The trial court found that the second encounter between Nelson and defendant was a stop under the second prong of the *Holmes* test, because defendant had a reasonable belief that his liberty had been significantly restricted. We note at the outset that the second prong has both a subjective and an objective component, for "police conduct with respect to a *person* is tested according to what defendant *did* believe and what an objectively reasonable person *would* believe under the circumstances * * *." *State v. Juarez-Godinez*, 326 Or 1, 7, 942 P2d 772 (1997) (emphasis in original). The trial court correctly noted the subjective and objective components of the inquiry in its decision, stating that "defendant could have reasonably believed—and, according to his testimony, did reasonably believe—that he was not free to go." The difficulty, however, is that defendant never testified that he believed he was not free to go. The trial court's statement that defendant's testimony reflects such a belief is simply mistaken, at least based on the record before us. Defendant's entire direct testimony concerning the events at issue here was that he did not remember the day he was arrested and did not remember talking to Nelson. On cross-examination, defendant admitted that he had some memory of a "conversation" with police leading to his arrest, repeated his claim that he was seeking a job in the Fun Center and denied that he had been selling marijuana. Simply put, nothing in defendant's testimony can be construed as expressing a subjective belief that Nelson had significantly restricted his liberty or freedom of movement during their second encounter.

■ Even if defendant had so testified, his belief would not be objectively reasonable on this record. The officers' behavior was not of a nature that would indicate to a reasonable person that he or she was not free to go. The mere fact that Nelson questioned defendant is not sufficient basis for such a belief, for "officers remain free to approach persons on the street * * *, request or impart information, or question them" without running afoul of Article I, section 9. *Holmes*, 311 Or at 410. When police officers approach and question a citizen in the street, the central inquiry in determining whether a stop has occurred is "whether the officer, *even if making inquiries a private citizen would not, has otherwise*

*conducted himself in a manner that would be perceived as a nonoffensive contact* if it had occurred between two ordinary citizens." *Id.* (emphasis supplied).

Here, there is nothing in the record to indicate that Nelson or his partner acted toward defendant in any offensive, physically threatening or otherwise extraordinary manner during their encounter. The only testimony was that the parties simply "talked." The officers apparently never touched defendant, raised their voices or drew their weapons. The trial court, in finding that a stop had occurred, focused on "the position of the two officers, in front and in back of the defendant," and found that their positioning made it objectively reasonable that defendant would believe he was not free to go. While we have no doubt that two police officers *could* physically bracket a lone defendant in such a way as to create a coercive atmosphere and physically seize him, that did not occur here. As previously noted, Nelson's unrebutted testimony was that his partner, while positioned behind defendant, was facing away, scanning the park area, and not paying attention to the encounter. His actions in so doing are not the kind of offensive, intimidating behavior that turns mere conversation into a stop.

Nor did the personal nature of the questions that Nelson asked defendant make this encounter a stop. We previously have found encounters involving exactly those same questions to be mere conversation. *See, e.g., State v. Gilmore,* 123 Or App 594, 597, 860 P2d 882, *rev den* 318 Or 171 (1993) (officer's request for identification was mere conversation); *State ex rel Juvenile Dept. v. Fikes,* 116 Or App 618, 622, 842 P2d 807 (1992) (encounter where officer discussed drug dealing and requested permission to search was not stop). Generally speaking, "the scope of the officer's inquiry is unrestricted," and "[i]t is the physical action of the officer that determines [the] result." *State v. Underhill,* 120 Or App 584, 588-89, 853 P2d 847, *rev den* 318 Or 26 (1993).

In sum, the evidence in the record does not support the trial court's conclusion that Nelson's encounter with defendant was a stop. Accordingly, the court erred in granting defendant's motion to suppress.

Reversed and remanded.