Argued and submitted November 29, 2000, affirmed August 15, 2001

## STATE OF OREGON,
### *Respondent,*

*v.*

## ROSITA AMAYA,
### *Appellant.*

## D9707503M; A104692

29 P3d 1177

Meredith Allen, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for unlawful possession of a firearm. ORS 166.250. She assigns error to the denial of her motion to suppress evidence obtained during a traffic stop. We affirm.

We view the facts in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). On November 1, 1997, at 1:00 a.m., Officer Reynolds observed a van with a burned-out license plate light stopped in the middle of the road in an area of Beaverton known for drug dealing. The van pulled forward and made an unsignaled left turn. Reynolds stopped the van for the burned-out light and the illegal turn. When Reynolds approached the van, he noticed that the driver was nervous and that the passenger, defendant, was moving around and "tucking" something into a large purse-like bag at her feet. Reynolds immediately felt concerned for his safety, although he did not actually see any weapons.

During the traffic stop, Reynolds learned that the driver of the van did not have a valid license. Because Reynolds did not want to leave the van on the side of the road during the impending morning rush hour, he asked defendant if she was a licensed driver. When she said she was, Reynolds took her license to check its validity. Neither Reynolds nor defendant could recall when he returned it.

After some conversation, the driver agreed to allow Reynolds to search the van. Reynolds asked the driver and defendant to step out of the vehicle while he awaited a second officer. Because of concern about what she might have in her bag, he encouraged defendant to leave it in the van, although he did not order her to do so. Defendant took the bag with her and placed it between her feet, where it was covered by her long coat. Noticing that defendant had taken her bag out of the van and apparently was trying to conceal it, Reynolds asked whether he could search it. Defendant refused, stating that she would be uncomfortable with a search. Reynolds asked her why she would be uncomfortable, and defendant answered that there were personal things in the bag. Reynolds then asked defendant if there was anything in the

purse she did not want him to find. Defendant eventually admitted that she had a pistol in the bag. Based on that admission, the officers searched defendant's bag and found the pistol.

Defendant moved to suppress both her admission that she had a pistol and the pistol itself as fruits of an unlawful stop. She argued that Reynolds's questions exceeded the scope of a lawful traffic stop. The state responded that the questions were not excessive because they were based on the officer's reasonable suspicion that defendant was involved in illegal activity. Alternatively, the state argued that ORS 810.410(3)(d) authorized Reynolds to ask about the contents of the bag for officer safety.

The trial court denied defendant's motion. It found that Reynolds was entitled "to inquire further for his safety." It further found that, in any event, the questioning occurred while defendant and the driver awaited the arrival of the second officer and that, because at that point defendant was entirely free to leave, the questioning amounted to "mere conversation."

We review the denial of a motion to suppress for errors of law, deferring to the trial court's findings of historical fact when there is evidence to support them. *State v. Ray*, 164 Or App 145, 149, 990 P2d 365 (1999).

■ On appeal, defendant makes two arguments. She first argues that, when Reynolds took and retained her license, he stopped her "separate[ly] and independent[ly]" from the valid traffic stop. That stop, defendant contends, was without reasonable suspicion. However, because defendant did not make that argument below, we do not address it on appeal. *See Stanich v. Precision Body and Paint, Inc.*, 151 Or App 446, 456, 950 P2d 328 (1997) (we ordinarily do not address arguments not made to the trial court).

■ Second, defendant contends that the evidence should be suppressed, because Reynolds asked her questions about her bag without reasonable suspicion that she was involved in illegal activity or posed a risk to officer safety. According to defendant, although ORS 810.410(3)(d) does appear to authorize the sort of inquiry that Reynolds initiated without

reasonable suspicion, the statute nevertheless should be construed to prohibit the inquiry in the absence of reasonable suspicion. Defendant reasons that the requirement of reasonable suspicion in the context of a traffic stop derives directly from the state and federal constitutions; thus, she argues, either the statute is unconstitutional or it must be judicially construed to include the reasonable suspicion requirement to save it from constitutional infirmity.

The state argues that, by its terms, ORS 810.410(3)(d) permits the sort of inquiry that Reynolds made in this case without reasonable suspicion. The state contests defendant's characterization of the reasonable suspicion requirement as a constitutional one; according to the state, the requirement originated as a purely statutory one, based on an earlier version of ORS 810.410. In any event, the state argues, suppression is not required, because Reynolds did not exploit any prior illegality.

ORS 810.410(3) provides, in part:

"A police officer:

"(a)   Shall not arrest a person for a traffic violation.

"(b)   May stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation.

"(c)   May make an inquiry into circumstances arising during the course of a detention and investigation under paragraph (b) of this subsection that give rise to a reasonable suspicion of criminal activity.

"(d)   May make an inquiry to ensure the safety of the officer, the person stopped or other persons present, including an inquiry regarding the presence of weapons."

By its terms, subsection (d) permits an officer to "make an inquiry" during the course of a traffic stop. It makes no mention of a requirement of reasonable suspicion. The absence of any language expressly imposing such a requirement is especially significant given the fact that the previous subsection expressly does include such a requirement. The legislature knows how to include a reasonable suspicion requirement and does so when it wishes to. It apparently did not wish to do so in subsection (d). We cannot insert what the legislature

decided to leave out of the language of the statute. ORS 174.010.

The question, then, is whether the state or federal constitution imposes such a requirement independently of ORS 810.410(3). In one decision, this court suggested that the requirement exists as a matter of constitutional law. That statement requires careful attention, both because it is the only one of its kind by this court and because it is incorrect.

In *State v. Carter/Dawson*, 34 Or App 21, 578 P2d 790 (1978), *aff'd* 287 Or 479, 600 P2d 873 (1979), the defendants were speeding and were pulled over by Officer Miller. During the course of the stop, Miller asked for consent to look inside the car. Having received consent, Miller inspected the car and found controlled substances. The defendants moved to suppress on the ground that Miller had lacked a basis for pulling them over in the first place. The trial court noted that the defendants were speeding, but concluded that the traffic infraction was merely an unlawful pretext for the stop. The state appealed. We held that police are authorized to initiate a traffic stop if they have an objectively—as opposed to a subjectively—reasonable basis for it. *Id.* at 28-31. We then went on to discuss the appropriate scope of the stop. We stated:

> "[C]onstitutional law provides that a stop can be no more intrusive than necessarily required by the objective reason giving rise to the stop. *State v. Evans*, 16 Or App 189, 517 P2d 1225, *rev den* (1974). ORS 131.615 appears to codify the constitutional limitation:
>
> " '* * * * *
>
> " '(2)  The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.
>
> " '(3)  The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicions.'
>
> "* * * * *
>
> "The constitutional and statutory law blends into a single rule: Traffic stops should be the minimum possible intrusion on Oregon motorists, and not an excuse to begin

questioning, searching or investigating that is unrelated to the traffic reason for the stop."

*Id.* at 31-32.

It is not clear why, after citing ORS 131.615, the court went on to address constitutional issues, given that the statute apparently was sufficient to establish the point. Clearly, the discussion about the constitutional nature of the limitations on the investigatory authority of police officers during a traffic stop was *dictum*. The question remains whether it was, nevertheless, correct.

In support of the statement that constitutional law—we did not specify whether we were referring to the state or federal constitution—imposes a reasonable suspicion requirement we cited a single case, *State v. Evans*. In that case, police officers stopped the defendant as he was walking down a public street because the hour was late and the area had experienced a recent spate of vandalism. The officers demanded identification. In the process, they noticed that the defendant had a bulge in his jacket pocket. They asked whether he had any weapons. The defendant said that he did not and attempted to turn away. One of the officers shined a flashlight at the jacket, and noticed a plastic bag sticking out. The officer thought the bag could contain marijuana, seized the bag, and arrested the defendant. *Evans*, 16 Or App at 191-92.

The defendant moved to suppress the evidence on the ground that the police had no lawful basis for seizing him. The trial court agreed, and we affirmed. Citing *Terry v. Ohio*, 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), we explained that, although police have authority to approach citizens and "make reasonable inquiries," they may not detain citizens in the absence of "articulable cause." *Evans*, 16 Or App at 196-97. We noted that the police had not merely questioned the defendant, but also had effectively detained him without any basis for suspecting him of criminal activity. *Id.* at 197. Accordingly, we concluded that the "street encounter" vio-lated the federal constitution.

Clearly, *Evans* had nothing to do with the scope of a police inquiry during a traffic stop. By its own terms, the case

may, at best, stand for the unremarkable proposition that, under the federal constitution,

> "the police may seize or search a person with such a degree of intensity as may be justified by the articulable quantum of knowledge they have and by the gravity of the police purpose to be served."

*Id.* at 194. Such a broad statement offers no support for the bright-line rule spelled out in *Carter / Dawson* that the scope of an officer's authority to question a person in the context of a traffic stop is limited by a reasonable suspicion requirement.

In subsequent cases, we and the Supreme Court have held that, under ORS 810.410(3)(b), an officer may question a defendant during a traffic stop only if the questioning reasonably relates to the traffic infraction or is based on reasonable suspicion of some other criminal activity unrelated to the traffic stop. *See, e.g., State v. Dominguez-Martinez*, 321 Or 206, 212, 895 P2d 306 (1995). But those cases expressly were predicated on the language of the statute, not any principle of constitutional law. They also predated the enactment of what is now ORS 810.410(3)(d).

In no case, in other words, have we held that the federal or state constitution precludes an officer from questioning a defendant during a traffic stop in the absence of reasonable suspicion. We turn to the question whether we should so hold.

We begin with the state constitution. Article I, section 9, of the Oregon Constitution, establishes a right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." The constitution thus protects against searches and seizures; conversely, it does not protect against other forms of police conduct that do not amount to a search or seizure. For example, the courts consistently have held that Article I, section 9, does not prohibit "mere conversation," a noncoercive encounter that involves no restraint of liberty. *State v. Holmes*, 311 Or 400, 407, 813 P2d 28 (1991); *State v. Caron*, 153 Or App 507, 512-13, 958 P2d 845 (1998).

■     The distinction between engaging in mere conversation and effecting a seizure is a functional one. If the conversation has the effect of accomplishing a restraint on liberty, it may be regarded as a seizure subject to the protections of the state constitution. *State v. Toevs*, 327 Or 525, 964 P2d 1007 (1998), is instructive in that regard. In that case, the police officer stopped the defendant's vehicle to investigate a traffic infraction. At the conclusion of the investigation, the officer returned the defendant's identification documents and told him that he was free to go. The officer then asked the defendant whether he could search the vehicle. The defendant declined. Another officer who had been observing the defendant noticed that he was acting very nervous and fidgety and that his pupils were dilated. That officer asked the defendant whether he had controlled substances in the car, and the defendant said that he did. The second officer ordered the defendant out of the car and searched it, finding controlled substances. The defendant moved to suppress, the trial court denied the motion, and this court affirmed. *Id.* at 528-30.

The Supreme Court reversed. The court held that Article I, section 9, precludes unreasonable seizures and that a traffic stop is a temporary seizure that occurs when an officer restrains a person's liberty or freedom of movement. To be reasonable, traffic stops must be supported by reasonable suspicion that the defendant has engaged in criminal activity. Once the traffic stop ends, the authority to detain the defendant ends. As a result, the police cannot continue to detain the defendant without reasonable suspicion that he or she has engaged in some further criminal activity. *Id.* at 534-35. Applying the foregoing reasoning to the facts of the case, the court held that, when the officers told the defendant that he was free to go, they lacked constitutional authority to continue to detain him. The court further held that the particular nature of the officers' questioning after the end of the traffic stop suggested that, in fact, the defendant was not free to go. Because at that point the officers lacked any basis for suspecting that the defendant was engaged in further criminal activity, the court held, the trial court should have granted the motion to suppress. *Id.* at 537.

■     *Toevs* thus stands for the proposition that questioning that has the effect of detaining a defendant *beyond* a completed traffic stop must be supported by reasonable suspicion

that the defendant is engaged in criminal activity. The court did not address whether questioning *during the course* of an otherwise lawful traffic stop likewise must be supported by reasonable suspicion.

The rationale of *Toevs*, however, makes clear that questioning *during* an otherwise valid traffic stop that does not have such a detaining effect does not require reasonable suspicion. That is because, under *Toevs*, it is detention that triggers Article I, section 9, not the mere fact that the officer is asking questions. Said another way, only when the questioning rises to the level of a seizure is the constitution implicated. Not all questioning will rise to that level, particularly when it takes place during a lawful stop and does not have the effect of extending its duration.

In this case, defendant argues that, in fact, Reynolds's questioning "kept [her] for a longer period of time than was reasonably necessary" to complete the traffic stop. The precise focus of the argument is not entirely clear. It appears in her brief in the midst of a discussion of *Carter / Dawson* and suggests that the questioning had a detaining effect because it was not "reasonably necessary." Thus, defendant appears to reiterate her assertion that police questioning during a traffic stop that is not reasonably related to the basis for the stop is *per se* unconstitutional. If that is her argument, we reject it for the reasons that we already have set forth.

To the extent that defendant argues that Reynolds's questioning itself extended the duration of the stop, the argument is unavailing as well. As the trial court found, Reynolds's questioning amounted to "mere conversation" during the time when the parties were waiting for the second officer to arrive, a time during which, moreover, defendant was entirely free to leave. This case therefore is materially distinguishable from *Toevs*. There is no basis for concluding that the questioning itself effectively seized her and thereby triggered the reasonable suspicion requirements of Article I, section 9.

We turn to the federal constitution. Like Article I, section 9, of the Oregon Constitution, the Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. The question whether police

inquiries during the course of a lawful traffic stop constitute a search or a seizure under the Fourth Amendment has yielded two different answers in the federal courts.

The first view, represented by decisions of the Fifth Circuit, is that, by itself, questioning during a lawful traffic stop does not amount to a search or a seizure; only when the questioning effectively imposes a limitation on the liberty of the defendant does it rise to the level of a seizure that must be supported by reasonable suspicion that the defendant was engaged in criminal activity. *United States v. Shabazz*, 993 F2d 431 (5th Cir 1993), is illustrative. In that case, the defendants were pulled over for speeding. The officers asked the defendants to produce identification. While running a computer check on the identification, the officers questioned the defendants, which questioning produced incriminating information. The defendants unsuccessfully moved to suppress that information, arguing that the questioning was not supported by reasonable suspicion that they had engaged in any criminal activity. The Court of Appeals affirmed the denial of the suppression motion, explaining:

"At the outset, we reject any notion that a police officer's questioning, even on a subject unrelated to the purpose of the stop, is itself a Fourth Amendment violation. * * * Mere questioning * * * is neither a search nor a seizure. This is not to say that questioning is unrelated to the determination that a detention has exceeded its lawful duration. In a garden variety *Terry* stop, the nature of the questioning during a later portion of the detention may indicate that the justification for the original detention no longer supports its continuation. Thus, when a police officer reasonably suspects only that someone is carrying a gun and stops and frisks that person, the officer, after finding nothing in a pat down, may not thereafter further detain the person merely to question him about a fraud offense. This is not because the questioning itself is unlawful, but because at that point suspicion of weapons possession has evaporated and no longer justifies further detention. When the officer is satisfied that the individual is not carrying a gun, the officer may not detain him longer to investigate a charge lacking reasonable suspicion. At that point, continuation of the detention is no longer supported by the facts that justified its initiation."

*Id.* at 436 (citations omitted). Turning to the facts of that case, the court held:

> "Here, appellants cannot successfully claim that the detention exceeded its original scope. Appellants concede, and we have no doubt, that in a valid traffic stop, an officer can request a driver's license, insurance papers, vehicle registration, run a computer check thereon, and issue a citation. In this case [the officer] asked [the defendant] to exit the vehicle and produce his driver's license. He then called for a computer check of the license. The questioning that took place occurred while the officers were waiting for the results of the computer check. Therefore, the questioning did nothing to extend the duration of the initial, valid seizure. Because the officers were still waiting for the computer check at the time that they received consent to search the car, the detention to that point continued to be supported by the facts that justified its initiation."

*Id.* at 437 (citations and footnotes omitted).

A second, opposing view is represented by decisions of the Tenth Circuit. In *United States v. Holt*, 229 F3d 931, 936 (10th Cir 2000), the court expressly held that

> "an officer conducting a routine traffic stop may not ask the detainee questions unrelated to the purpose of the stop, even if the questioning does not extend the normal length of the stop, unless the officer has reasonable suspicion of illegal activity."

The court voiced "serious reservations" about the Fifth Circuit's decision in *Shabazz*, citing several Supreme Court decisions that refer to limitations as to both the scope and duration of police encounters. *Id.* In any event, the court held, prior Tenth Circuit decisions compelled adherence to the rule that police may not engage in questioning unrelated to the purpose of the stop without reasonable suspicion of illegal activity. *Id.* at 936-37.

We are bound by neither line of cases. In the absence of United States Supreme Court precedent, we are free to adopt whatever view of the federal constitution that we find most persuasive. *Joyce v. Multnomah County,* 114 Or App 244, 248, 835 P2d 127 (1992).

We find most persuasive the reasoning of the Fifth Circuit. To begin with, the Fifth Circuit's reasoning is most faithful to the basic principle that the constitution protects against unreasonable searches and seizures. Questioning, by itself, simply is not a search or a seizure, as the United States Supreme Court has recognized. *See, e.g., Florida v. Bostick*, 501 US 429, 434, 111 S Ct 2382, 115 L Ed 2d 389 (1991) ("[M]ere police questioning does not constitute a seizure."). The Tenth Circuit decisions such as *Holt* offer no explanation why mere questioning during the course of a lawful traffic stop rises to the level of a search or a seizure.

*Holt* does mention statements from three Supreme Court decisions referring to limitations on the scope of police encounters. None of the three decisions supports the broad rule that the Tenth Circuit drew from them. One of the three citations is merely a concurring opinion, *United States v. Sharpe*, 470 US 675, 690, 105 S Ct 1568, 84 L Ed 2d 605 (1985) (Marshall, J., concurring). The second, *Florida v. Royer*, 460 US 491, 500, 103 S Ct 1319, 75 L Ed 2d 229 (1983), stands for the familiar proposition that, during an investigative stop, "[t]he scope of the detention must be carefully tailored to its underlying justification." In citing *Royer*, the Tenth Circuit merely assumed that questioning during a stop amounts to detention, when the Supreme Court said nothing of the sort. The third, *United States v. Hensley*, 469 US 221, 235, 105 S Ct 675, 83 L Ed 2d 604 (1985), similarly mentioned that, on the particular facts of that case, the information provided the authorities with reasonable suspicion sufficient to justify "the length and intrusiveness" of the detention that occurred. The opinion said nothing about the extent to which questioning itself may constitute detention.

■        We therefore reject the Tenth Circuit's reasoning and adopt the position of the Fifth Circuit that questioning during the course of a traffic stop does not offend the Fourth Amendment unless it has the effect of further detaining the defendant without reasonable suspicion of illegal activity.

With that in mind, we return to the facts of this case. Once again, defendant's argument appears to be limited to the assertion that questioning during a traffic stop must be reasonably related to the grounds for the stop. To the extent

that her argument fairly may be read to suggest that Reynolds's questioning had an intrinsically detaining effect, as we have noted earlier, the trial court's unchallenged findings are to the contrary. Under the circumstances, we find no basis for concluding that the questioning violated the Fourth Amendment.

Affirmed.