Argued and submitted April 30, reversed and remanded June 10, petition for review denied September 29, 1998 (327 Or 553)

## STATE OF OREGON,
*Appellant,*

*v.*

## ANTHONY CRAIG BAKER,
*Respondent.*

(96-06-34469; CA A95208)

961 P2d 913

Douglas Zier argued the cause for appellant. On the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General, and David B. Thompson, Assistant Attorney General.

Louis R. Miles, Deputy Public Defender, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

HASELTON, J.

## HASELTON, J.

The state appeals from an order suppressing evidence. ORS 138.060(3). The trial court concluded that, in the totality of the circumstances, a police officer's remark to defendant, "So Craig, did you buy any good crack in there?" effected a stop. We disagree, and, consequently, reverse and remand.

The material facts, as found by the trial court, are undisputed. Shortly before noon on June 8, 1996, Portland Police Officer Zylawy was on patrol. He saw defendant, a known drug user with whom he had talked many times, coming out of the front door of a known "crack house." Thinking that defendant may have just concluded a drug transaction, Zylawy drove his car around the corner, parked it, and walked back toward the house. As he did so, Zylawy, who was in uniform, encountered defendant walking toward him on the sidewalk. Zylawy asked defendant, "So Craig, did you buy any good crack in there?" Defendant responded, "No, I'm clean, man, you can check me." In the course of the ensuing pat down, Zylawy felt an object he believed was a "crack pipe" and, at that point, arrested the defendant. The ensuing search yielded a crack pipe with cocaine residue on it and a bindle of methamphetamine.

Defendant was charged with two counts of possession of a controlled substance. He filed a motion to suppress, arguing, entirely, that the initial encounter with Zylawy was a "stop" unsupported by reasonable suspicion. The trial court granted the motion, concluding that the encounter was a "stop" and that, at the time of the initial encounter, Zylawy lacked reasonable suspicion that defendant had engaged in an illegal drug transaction. Essential to the trial court's analysis was its belief that *State v. Terhear/Goemmel*, 142 Or App 450, 923 P2d 641 (1996), compelled the conclusion that that initial encountered was a "stop":

"I find the facts to be incredibly similar, and that, that it was a stop. To me, everything suggests that it was a stop.

"Most importantly, that the comment in *Terhear/[Goemmel]* * * * Judge [Haselton's] statement distinguishing all the other cases that occurred before *Terhear/[Goemmel]*, was that in none of those cases did the officer announce to the individual that he or she had broken the law in the officer's presence. And the question that this officer submitted to Mr. Baker at the moment of their encounter was the equivalent of asking 'didn't you just break the law?' 'Did you just buy crack cocaine in the house or good crack' when, after all, he saw the defendant at the door.

"To me, based on *Terhear/[Goemmel]* and really only based on that case, I find that * * * the encounter was a stop and not mere conversation * * *."[1]

On appeal, the state challenges both of the trial court's premises—that is, that the encounter was a "stop" and that Zylawy lacked reasonable suspicion. Because we agree that the trial court erred with respect to the former, we do not address the latter.

Our disposition turns on the difference between our understanding of *Terhear / Goemmel* and the trial court's. We imply no criticism; imperfect communication is an inevitable, if regrettable, byproduct of appellate review. Nevertheless, we now clarify that our intended holding in *Terhear / Goemmel* was quite narrow.

In *Terhear / Goemmel*, the officer saw the defendant, a passenger in a car, ride by without wearing a seat belt. A few minutes later, the officer saw the same car, parked, with the defendant still in it. The officer approached the defendant and told him that he had seen him ride by earlier while not wearing a seat belt. Thereafter, the encounter escalated, ultimately resulting in the discovery of drugs and drug-related paraphernalia.

The trial court granted the defendant's motion to suppress and, on appeal, we considered whether the initial encounter effected a traffic stop for purposes of ORS

---

[1] The trial court's determination that the officer lacked reasonable suspicion was based primarily on *State v. Aguilar*, 139 Or App 175, 912 P2d 379, *rev den* 323 Or 265 (1996).

810.410(3)(b), implicating the analysis of *State v. Dominguez-Martinez*, 321 Or 206, 895 P2d 306 (1995). We concluded that the encounter did effect a stop:

> "The state argues that there was no stop here because, in the totality of the circumstances, a reasonably objective person in Goemmel's position would have believed that he was free to leave. As support for that proposition, the state masses a battery of cases in which officers approached parked cars and either requested identification from the occupants or engaged the occupants in conversation. In each instance, we concluded that the encounter did not significantly interfere with the defendant's liberty and, thus, was not a stop.
>
> "We do not dispute the continuing vitality of those decisions. However, the state ignores the critical—indeed, dispositive—distinction between those cases and this one: In none of those cases did the officer announce to the individual that he or she had broken the law in the officer's presence.
>
> "Conversely, here, Andrew began the encounter by telling Goemmel that he had just seen him break the law. An ordinary citizen, faced with such a statement by a uniformed police officer, would not believe that he or she was free to leave. Rather, a person in Goemmel's position would reasonably believe that he or she was not free to go until the officer took some further action, such as issuing a citation or telling the individual that he or she could move on. Common experience and common sense admit no other answer."

*Terhear/Goemmel*, 142 Or App at 458 (footnotes omitted).

Here, in contrast, Zylawy asked defendant a question. Zylawy did not announce that he had seen defendant break the law. Rather, the initial encounter and inquiry represented the same sort of interaction that we have repeatedly characterized as "mere conversation." *See Terhear/Goemmel*, 142 Or App at 458 n 6 (canvassing case law). *See also State ex rel Juv. Dept. v. Fikes*, 116 Or App 618, 842 P2d 807 (1992) (holding that there was no stop where officers told one of the defendants "of neighbors' complaints of drug dealing" but did not accuse the defendant of drug dealing, much less categorically inform him that he had seen him violate the law).

The encounter was not a "stop." Accordingly, the court erred in allowing the motion to suppress.[2]

Reversed and remanded.

---

[2] On appeal, defendant argues, alternatively, that the Fourth Amendment to the United States Constitution compels suppression. However, defendant's only reference to the Fourth Amendment before the trial court was a single citation without any explanatory argument. Rather, the only argument to the trial court was framed exclusively in terms of Article I, section 9, of the Oregon Constitution. Accordingly, we do not consider defendant's Fourth Amendment analysis raised for the first time on appeal. *See, e.g., State v. Riggs*, 143 Or App 427, 430-31, 923 P2d 683 (1996), *rev den* 325 Or 247 (1997).