Argued and submitted October 30, reversed and remanded December 24, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOSEPHINE ALLEN,
*Defendant-Appellant.*

Multnomah County Circuit Court
061136733; A135078

198 P3d 466

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Karla H. Ferrall, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Carson, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from a judgment of conviction for unlawful possession of cocaine, ORS 475.884, assigning error to the trial court's denial of her motion to suppress evidence. We agree with defendant that the evidence obtained was the product of exploitation of an unlawful seizure of defendant in violation of her rights under Article I, section 9, of the Oregon Constitution. Accordingly, we conclude that the trial court erred in denying the motion to suppress, and reverse and remand.

The trial court made extensive oral findings on the record. Consistently with those findings, the following material facts are undisputed: On November 3, 2006, at about 11:30 p.m., Portland Police Officer Brown saw defendant get out of a parked car in which the driver remained. Brown saw defendant walk across the street in the direction of an apartment complex, which was familiar to Brown as a "dope house." Defendant then walked out of Brown's view. Consequently, because Brown did not see where defendant went, he did not see whether she entered the apartment complex, much less any particular apartment in that complex.

About three to five minutes later, defendant walked back across the street toward the car. Brown, in uniform, approached defendant and asked her, "What's going on? Where you comin' from?" Brown then told defendant that he "knew she was coming from a dope house" and "that if she was honest and gave [him] the dope [he] would give her a citation."

In response to Brown's remarks, defendant reached into her jacket pocket and pulled out a broken crack pipe and a rock of crack cocaine. Defendant then stated, "This is mine. I'll have to call my counselor to tell him I've relapsed." Brown cited defendant for possession of a controlled substance, cocaine, and let her go.

Before trial, defendant moved to suppress her statements and the seizure of the suspected cocaine. Defendant contended, *inter alia*, that Brown's statements to her that he "knew she was coming from a dope house" and "that if she was honest and gave [him] the dope [he] would give her a

citation" effected a stop unsupported by reasonable suspicion. Defendant further asserted that her statements and the physical evidence were the unattenuated products of that unlawful stop.

The state opposed that motion. Specifically, invoking *State v. Baker*, 154 Or App 358, 961 P2d 913, *rev den*, 327 Or 553 (1998), the state responded that the interaction between Brown and defendant did not constitute a stop. The state argued that Brown's statements to defendant were less accusatory than the officer's statements in *Baker*—which did not effect a stop—and, thus, according to the state, the encounter between Brown and defendant constituted "mere conversation." The state further remonstrated that Brown did not search defendant; rather, the state asserted, defendant voluntarily produced her possessions.[1]

At the hearing on the motion, Brown testified that he believed defendant had gone to the apartment complex to obtain drugs because the car was parked in an area where cars are not usually parked and the driver waited in the vehicle. He also testified that, although he never mentioned jail to defendant, he understood his statements to have implied to defendant that she could either go to jail or get a citation. The trial court explicitly found that the reasonable implication from Brown's statement was that if defendant gave him the drugs, she could avoid going to jail.

The trial court denied the motion to suppress after concluding that Brown's encounter with defendant did not constitute a stop under ORS 131.615 or a seizure under Article I, section 9. The trial court reasoned that Brown never told defendant that she was not free to leave and determined that there were no reasons for defendant to conclude otherwise. The trial court further agreed with the state that defendant had voluntarily produced the incriminating evidence.

Defendant waived her right to a jury trial and was tried to the court. After a stipulated facts trial, the trial court

---

[1] In opposing suppression, the state did not address whether, if the encounter was a stop, Brown had reasonable suspicion. At oral argument on the motion, the trial court sought to clarify whether the state was arguing that Brown had reasonable suspicion to stop defendant. The state clarified that it was not.

convicted defendant of unlawful possession of cocaine, ORS 475.844.

On appeal, defendant assigns error to the trial court's denial of her motion to suppress. Defendant contends that Brown unlawfully seized her without reasonable suspicion and that her subsequent statements and the inculpatory physical evidence were obtained by Brown's exploitation of that unlawful seizure in violation of Article I, section 9.[2]

The state's sole response on appeal is that the encounter between Brown and defendant did not constitute a seizure. The state does not dispute defendant's contentions that, if defendant was seized, (1) Brown acted without reasonable suspicion and (2) the evidence sought to be suppressed was the unattenuated product of that alleged unlawful seizure.

■ Our standard of review for search and seizure cases is set forth in *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993):

> "Determination of the legality of searches and seizures depends largely on the facts of each case. *State v. Warner*, 284 Or 147, 149, 585 P2d 681 (1978). What actually happened is a question of fact for the trial court. A trial court's findings of historical fact are binding on appellate courts if there is constitutionally sufficient evidence in the record to support those findings. *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968). Our function is to decide whether the trial court applied legal principles correctly to those facts. *State v. Davis*, 295 Or 227, 238, 666 P2d 802 (1983). If findings of historical fact are not made on all pertinent issues and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the court's ultimate conclusion. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991)."

■ We first address whether the encounter between defendant and Brown was a "seizure" or some other, less intrusive encounter. Defendant contends that, under Article

---

[2] Article I, section 9, provides, in part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *."

I, section 9, defendant was "seized" at the point when Brown stated to defendant that he "knew she was coming from a dope house" and "that if she was honest and gave [him] the dope [he] would give her a citation." As primary support for her position, defendant invokes *State v. Terhear/Goemmel*, 142 Or App 450, 923 P2d 641 (1996). Defendant further contends that *Baker*, on which the state relies, is materially distinguishable.

For the reasons that follow, we agree with defendant that the circumstances here are closer to those in *Terhear/ Goemmel* than those in *Baker* and, thus, the former, not the latter, controls. Accordingly, we conclude that, given the content and context of Brown's statements to defendant, the interaction between Brown and defendant transcended "mere conversation" and effected a "seizure" for purposes of Article I, section 9.[3]

In *Terhear/Goemmel*, the officer saw the defendant, a passenger in a car, ride by without wearing a seat belt. 142 Or App at 452. A few minutes later, the officer saw the same car, parked, with the defendant still in it. The officer approached the defendant and told him that he had seen him ride by earlier while not wearing a seat belt. *Id.* Thereafter, the encounter escalated, ultimately resulting in the discovery of drugs and drug-related paraphernalia. *Id.* at 452-53.

The trial court granted the defendant's motion to suppress and, on appeal, we considered whether the initial encounter effected a traffic stop for purposes of ORS 810.410(3)(b). *Id.* at 454-59. We concluded that the encounter did effect a stop:

> "The state argues that there was no stop here because, in the totality of the circumstances, a reasonably objective person in Goemmel's position would have believed that he was free to leave. As support for that proposition, the state masses a battery of cases in which officers approached parked cars and either requested identification from the occupants or engaged the occupants in conversation. In

---

[3] Although *Terhear/Goemmel* concerned a statutory violation, the reasoning in that opinion is equally applicable in this context. *See State v. Hall*, 339 Or 7, 33 n 19, 115 P3d 908 (2005) (noting that the reasoning in a statutory violation case has equal application in an Article I, section 9, analysis).

each instance, we concluded that the encounter did not significantly interfere with the defendant's liberty and, thus, was not a stop.

"We do not dispute the continuing vitality of those decisions. *However, the state ignores the critical—indeed, dispositive—distinction between those cases and this one: In none of those cases did the officer announce to the individual that he or she had broken the law in the officer's presence.*

"Conversely, here, [the officer] began the encounter by telling Goemmel that he had just seen him break the law. An ordinary citizen, faced with such a statement by a uniformed police officer, would not believe that he or she was free to leave. Rather, a person in Goemmel's position would reasonably believe that he or she was not free to go until the officer took some further action, such as issuing a citation or telling the individual that he or she could move on. Common experience and common sense admit no other answer."

*Id.* at 458 (footnotes omitted; emphasis added).

Conversely, the officer's conduct in *Baker* did not effect a stop. 154 Or App at 363. There, the officer saw the defendant come out of a known "crack house." *Id.* at 360. The officer approached the defendant and asked him, "So Craig, did you buy any good crack in there?" *Id.* The defendant, in response, denied that he had and allowed the officer to search him. *That search ultimately resulted in the discovery of drugs and drug-related paraphernalia. Id.*

The trial court granted the defendant's motion to dismiss based on its belief that *Terhear/Goemmel* compelled a conclusion that the initial encounter was a stop. *Baker,* 154 Or App at 360-61. On appeal, we distinguished *Terhear/Goemmel* and concluded that the encounter in *Baker* did not constitute a stop:

"Here, in contrast, [the officer] *asked defendant a question.* [The officer] did not *announce that he had seen defendant break the law.* Rather, the initial encounter and inquiry represented the same sort of interaction that we have repeatedly characterized as 'mere conversation.'"

*Id.* at 362 (emphasis added).

The fundamental distinction between *Terhear / Goemmel* and *Baker* is that, in *Baker*, the encounter involved an *inquiry* about criminal activity, while the encounter in *Terhear / Goemmel* involved an *accusation* of criminal activity committed in the presence of the officer. Indeed, we identified that precise distinction in *Baker*. 154 Or App at 362.

This case is akin to *Terhear / Goemmel*, not *Baker*. Brown's statements to defendant that he *"knew* she was coming from a dope house" and "that if she was honest and gave [him] *the* dope [he] would give her a citation" (emphasis added) are tantamount to the announcement in *Terhear / Goemmel* that the officer had just seen defendant break the law. Indeed, as Brown candidly acknowledged, his statement implicitly conveyed to defendant that, by surrendering "the dope," she could avoid arrest. That implied threat of arrest was—as the state does not dispute—unsupported by reasonable suspicion, much less by probable cause. Those circumstances stand in stark contrast to *Baker*, where the officer merely inquired whether the defendant had bought drugs.

Here, as in *Terhear / Goemmel*, "[a]n ordinary citizen, faced with such a statement by a uniformed police officer, would not believe that he or she was free to leave." 142 Or App at 458. Rather, a person in defendant's position "would reasonably believe that he or she was not free to go until the officer took some further action, such as issuing a citation or telling the individual that he or she could move on. Common experience and common sense admit no other answer." *Id.*; *see generally State v. Holmes*, 311 Or 400, 410, 813 P2d 28 (1991) ("The pivotal factor is whether the officer, even if making inquiries a private citizen would not, has otherwise conducted himself [or herself] in a manner that would be perceived as a nonoffensive contact if it had occurred between two ordinary citizens."). Accordingly, defendant was seized when Brown told her that he "knew she was coming from a dope house" and "that if she was honest and gave [him] the dope [he] would give her a citation."

Having concluded that defendant was seized for purposes of Article I, section 9, we must next consider whether that seizure was unlawful and requires suppression. As noted, the state does not dispute that, on this record, Brown

acted without reasonable suspicion.[4] Further, the state does not dispute that, under the analysis of *State v. Hall*, 339 Or 7, 34-35, 115 P3d 908 (2005), defendant's statements and disclosure of the inculpatory physical evidence were sufficiently causally related to Brown's conduct that the former was the "exploited" product of the latter. *See id.* (after a defendant presents a minimal factual nexus between a defendant's consent to search and a prior, unlawful seizure, the state has the burden to prove that such consent was independent of, or only tenuously related to, the prior unlawful seizure); *see also State v. Thompkin*, 341 Or 368, 381, 143 P3d 530 (2006) (*Hall*'s reasoning "is equally applicable * * * where [a] defendant voluntarily surrender[s] incriminating evidence in response to [an] officer's questioning during an impermissible seizure").

The trial court erred in denying defendant's motion to suppress.

Reversed and remanded.

---

[4] In that regard, the trial court's findings are revealing:

"This is an officer that is telling [someone] he believes is a suspect in some type of drug activity, that he knows she came from a drug house, *even though that is not supported by * * * the evidence.*

*"He didn't know that she was coming from a drug house. He did not see her go to the drug house, nor did he see her come from this particular drug house.* He believed she was.

"But that belief really was—* * * it may have been reasonable, I'm not sure I need to find that or not, but that reasonable belief he had that she was coming from this drug house *is not supported by objective evidence.*"

(Emphasis added.)