Argued and submitted February 24, affirmed October 20, 2010, petition for review denied March 4, 2011 (349 Or 664)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JAMES LAWRENCE HALL, II,
*Defendant-Appellant.*

Washington County Circuit Court
C080935CR; A139398

241 P3d 757

Zachary L. Mazer, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

Defendant appeals his conviction for possession of a controlled substance, ORS 475.894. He assigns error to the trial court's denial of his motion to suppress evidence that police found in his automobile and statements that he made after they found it. He argues that the evidence derived from a stop that was unlawful under Article I, section 9, of the Oregon Constitution, and that, even if the stop itself was originally lawful, the evidence derived from consent that he gave after the detention had been unlawfully extended. He also argues that the court erred in admitting incriminating statements because they occurred when he was in compelling circumstances and had not received *Miranda* warnings as required by Article I, section 12. We conclude that the stop was lawful, the consent occurred during an unavoidable lull in the lawful processing of that stop, and that defendant did not adequately raise his *Miranda* arguments at trial. We therefore affirm.

We recite the facts as stipulated by the parties and found by the court, and we review the court's determination that the facts do not require suppression for legal error. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). Washington County Sheriff's Deputy Kiurski received a dispatch call reporting a suspicious vehicle in a residential area. He drove to the area and saw a car that matched the one that was described in the report. He noted that the car was parked two or three feet from the curb in violation of ORS 811.570(1)(a)(A) (wheels must be within 12 inches of curb) and that a person—defendant—was asleep behind the wheel. Following protocol, he requested a backup officer before approaching the vehicle.

When the backup officer, Deputy Klostreich, arrived, both officers approached defendant's car. Klostreich tapped on defendant's window several times. Defendant awoke and rolled the window down. Neither officer detected any evidence of intoxication or of any crime or violation other than the unlawful parking. Klostreich asked for defendant's identification, which he provided; Klostreich then gave defendant's identification to Kiurski to run a records check.

While the officers were waiting to hear from dispatch regarding defendant's record, Klostreich asked defendant if he had any weapons or drugs in the car. Defendant denied having any weapons, but, with respect to drugs, he responded, "I don't think so." Klostreich nonetheless asked for consent to search defendant for weapons, and defendant agreed. He got out of the car and allowed the officer to perform a patdown search, which did not yield any evidence of weapons or contraband. Klostreich then asked if he could search defendant's car, and defendant consented. The search yielded a glass smoking pipe on the front passenger seat. Klostreich asked defendant if he had methamphetamine in the car, and defendant said he did and that it was in the center console. Klostreich found the disputed evidence, at which point he handcuffed defendant, gave him *Miranda* warnings, and put him in the patrol car. At some point after the search of the car had occurred, dispatch reported back to the officers that defendant's license was suspended.

The state charged defendant with one count of unlawful possession of methamphetamine. Defendant moved to suppress the evidence obtained from the search of his car on the grounds that the deputies lacked probable cause to stop him, or, in the alternative, that the officers discovered the evidence on the basis of consent that they unlawfully obtained. Further, although he did not include an Article I, section 12, argument regarding *Miranda* warnings in his written pretrial motion and did not object when the court informed the parties that it was not going to address *Miranda* issues, he made a passing reference to that issue during his closing argument. The court denied his motion. He was tried and convicted on stipulated facts, and this appeal ensued.

Defendant's first argument under Article I, section 9, is that the officers conducted a "seizure" of his person when they took his driver license and checked his record. The seizure was unlawful, he maintains, because it was unreasonable under the circumstances. We agree that the officers seized defendant by taking and retaining his license, *State v. Hall*, 339 Or 7, 19, 115 P3d 908 (2005), but we reject the contention that the stop was not lawful. Police can conduct a stop for violation of a traffic offense if they have probable cause to

believe that the offense has occurred and that belief is reasonable. *State v. Matthews*, 320 Or 398, 402, 884 P2d 1224 (1994). The officers believed that defendant had committed a traffic violation, and that belief was undeniably reasonable; they observed that his car was not parked within 12 inches of the curb. Thus, the detention did not violate Article I, section 9.

Defendant appears to recognize this principle, but argues that the scope or nature of the seizure—detaining defendant while they held his driver license and ran a records check—exceeded constitutional bounds because it is not necessary for a mere parking violation. Defendant relies on *State v. Chambers*, 226 Or App 363, 372, 203 P3d 337 (2009), for the proposition that, in a noncriminal, nonemergency situation, police conduct at each step in the investigatory process must be reasonable. *Chambers* involved police conduct in an "emergency caretaking" situation; the comment regarding reasonableness may or may not apply in other contexts. Regardless, even presuming that it applies here, the police conduct was eminently reasonable. When police officers detain a person on probable cause of violating a traffic law, it is reasonable to determine whether the person is licensed to continue on his or her way after the encounter ends. That inquiry requires determining whether, for example, the driver possesses a valid driver license—which, as it happens, defendant did not. *See* ORS 810.410(3)(b) (police may "stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation").

■ Defendant also argues that, even if the detention was initially lawful, the officers unreasonably extended its duration or questioned defendant on matters beyond the scope of the stop, resulting in the consent that led to discovery of the disputed evidence and statements. For that reason, defendant argues, the evidence and statements must be suppressed as "fruit of the poisonous tree." We disagree.

■ Determining the legality of a traffic stop is a fact-specific inquiry. *State v. Hendon*, 222 Or App 97, 103, 194 P3d 149 (2008). In *State v. Rodgers*, 219 Or App 366, 371, 182 P3d 209 (2008), *aff'd sub nom State v. Rodgers/Kirkeby*, 347

Or 610, 227 P3d 695 (2010), we explained that questioning during an unavoidable lull in a traffic stop is lawful even if it does not relate to the stop and there is no suspicion of criminal activity. We summarized:

> "[A]lthough an officer is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation, *such as while awaiting the results of a records check,* that officer is not similarly free to question the motorist about unrelated matters as an alternative to going forward with the next step in processing the infraction, such as the writing or issuing of a citation. When an officer has all of the information necessary to issue a citation but instead delays in processing it or in telling the motorist that he or she is free to go, the stop is no longer lawful unless the officer has reasonable suspicion of further criminal activity."

*Id.* at 372 (emphasis added). Under a straightforward application of these precepts, defendant's argument cannot prevail. The undisputed facts disclose that the consent to search occurred "during an unavoidable lull in the investigation," while the officers were "awaiting the results of a records check."

Defendant, however, argues that the quoted summary from this court's opinion in *Rodgers* did not survive the Supreme Court's opinion in that case. According to defendant, *Rodgers/Kirkeby* dispenses with the distinction between investigation during an unavoidable lull in a traffic stop and investigation that occurs afterwards, and that, in both situations, the investigation is unlawful unless it relates to the traffic offense or the police have reasonable suspicion relevant to a different offense. Defendant points to the following passage:

> "Police authority to perform a traffic stop arises out of the facts that created probable cause to believe that there has been unlawful, noncriminal activity, *viz.,* a traffic infraction. Police authority to detain a motorist dissipates when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed. Other or further conduct by the police, beyond that

reasonably related to the traffic violation, must be *justified* on some basis other than the traffic violation."

*Rodgers/Kirkeby*, 347 Or at 623 (emphasis in original). According to defendant, that passage refers to unrelated investigations that occur during ("other") and after ("further") the traffic stop; such inquiries that must be justified on some basis other than the traffic violation. Defendant also focuses on the following sentence: "Police conduct *during* a noncriminal traffic stop does not further implicate Article I, section 9, so long as the detention is limited and the police conduct is reasonably related to the investigation of the noncriminal traffic violation." *Id.* at 624 (emphasis added). The implication of this statement, defendant argues, is that, if the investigation during or after a traffic stop is *not* "reasonably related to the investigation" of the violation, it must be justified by independent suspicion.

The state, however, calls our attention to the following parts of the opinion:

"[T]he state's assertion—that police may make unrelated inquiries (including requests to search a person or vehicle) during the course of a traffic stop without implicating Article I, section 9—is correct in the sense that verbal inquiries are not searches and seizures. That is, we agree that police inquiries during the course of a traffic stop (including requests to search a person or vehicle) are not searches and seizures and thus by themselves ordinarily do not implicate Article I, section 9. However, police conduct that involves physical restraint or a show of authority that restricts an individual's freedom of movement typically does implicate Article I, section 9.

"* * * * *

"* * * Because police inquiries during a traffic stop are neither searches nor seizures, police inquiries in and of themselves require no justification and do not necessarily implicate Article I, section 9. However, police inquiries unrelated to a traffic violation, when combined with physical restraint or a police show of authority, may result in a restriction of personal freedom that violates Article I, section 9."

*Id.* at 622-24. These passages, the state maintains, highlight a difference between police *conduct*—in particular, restraints on a person's freedom of movement or other shows of authority—and police *inquiries*, and only conduct requires independent reasonable suspicion. Further, the state maintains, *Rodgers/Kirkeby* does not deal with inquiries or conduct that occurs during an unavoidable lull in a traffic stop. To support that position, the state notes the following footnote:

> "We emphasize that the restriction of movement that implicates Article I, section 9, in both these cases occurred after the police officers had completed their investigations reasonably related to the traffic infraction and issuance of the citation. We express no opinion about the effect of unrelated police inquiries that occur during the course of the traffic violation investigation and that do not result in any further restriction of movement of the individual."

*Id.* at 627 n 5.

Both parties have plausible arguments. Ultimately, however, we agree with the state in at least one important respect: *Rodgers/Kirkeby* provides no authority for the proposition that police inquiries during an unavoidable lull in a traffic stop must be justified by independent reasonable suspicion. We base our conclusion on three considerations. First, the rule that the court announces in *Rodgers/Kirkeby* is that, when police conduct amounts to a show of authority or restrains a person's freedom of movement, that conduct must be justified by independent reasonable suspicion. That rule could not be intended to apply to conduct during a traffic stop, because the stop itself restrains the person and is itself a show of authority as the court in this very case expressly recognizes: "[T]he reality is that a motorist stopped for a traffic infraction is legally obligated to stop at an officer's direction * * * and therefore is not free unilaterally to end the encounter and leave whenever he or she chooses." *Id.* at 623. If the rule applied to inquiries that occur during a traffic stop, such inquiries would never be permissible—an implication that cannot be reconciled with the court's statement that "inquiries during a traffic stop are neither searches nor seizures." *Id.* at 624.

Second, we take the court at its word when it disclaims the opinion's application to "unrelated police inquiries that occur during the course of the traffic violation investigation," even though the disclaimer appears limited to inquiries "that do not result in any further restriction of movement of the individual," *id.* at 627 n 5, whatever that qualifying phrase might mean.[1]

Third, and most importantly, neither *Rodgers/ Kirkeby* nor our opinion in *Rodgers* actually *holds* anything regarding police inquiries during an unavoidable lull in a traffic stop. In both opinions, any statements about that subject are *dicta*, because the disputed inquiries in the cases did not occur *during* a lawful stop; they occurred *after* the stop should have ended, and were unlawful for that reason. *Id.* at 614 (*Rodgers*) and 617 (*Kirkeby*). In *State v. Amaya*, 176 Or App 35, 29 P3d 1177 (2001), *aff'd on other grounds*, 336 Or 616, 89 P3d 1163 (2004), we *held* that there are no Article I, section 9, implications if an inquiry unrelated to a traffic stop occurs during a routine stop but does not delay it. That proposition remains good law, and that is what occurred in this case. We therefore reject defendant's Article I, section 9, argument.

■     Finally, defendant argues that the court erred in not suppressing certain incriminating statements that he made. According to defendant, the statements occurred as the result of interrogation taking place under circumstances that "judges would and officers should recognize to be 'compelling'" and, in such situations, Article I, section 12, requires that *Miranda* warnings be administered. *State v. Magee*, 304 Or 261, 265, 744 P2d 250 (1987). The state responds that defendant did not advance any *Miranda* argument at trial and therefore cannot advance one on appeal. ORAP 5.45. We agree with the state.

During the hearing on the motion to suppress, defendant attempted to raise an argument regarding *Miranda* warnings, despite the fact that the issue was not argued in his pretrial motion. The following colloquy occurred:

---

[1] According to the state, it means that the inquiries themselves somehow restrict movement; according to defendant, it means that the inquiries, including "May I search you?" ultimately lead to a restraint.

> "[Defense Counsel]: And * * * you heard him, Deputy Klostreich, or did you give—read [defendant] something like *Miranda* rights?
>
> "[Kiurski]: I did not read it to him at that point, no.
>
> "[Prosecutor]: Your Honor, if I can, I guess, object as to relevance at this point.
>
> "[Court]: Overruled.
>
> "[Prosecutor]: There's nothing in the motion that deals with *Miranda*. I was not put on notice it would be.
>
> "[Court]: I'm overruling the motion. I'm not going to rule on any *Miranda* issues, but it has to do with voluntariness and just the whole—
>
> "[Prosecutor]: Okay.
>
> "[Court]: —circumstances."

Defendant did not object to the court's statement that it would not rule on *Miranda* issues, nor did defendant subsequently raise any further *Miranda* arguments until his closing argument. At that point, defense counsel stated:

> "And then, lastly—and I didn't put this in my motion because I didn't really contemplate it, but just—to the extent that he eventually did get consent to search * * * it was, in my opinion, after he'd been ordered out of the car, told to sit on the curb, questioned about—confronted with a pipe, potential evidence of a crime, asked if there was meth in the car, clearly questions likely to elicit an incriminating response. So at that point he's in compelling circumstances and only then do they say, okay, do you mind if we look in the car for methamphetamine.
>
> "* * * * *
>
> "* * * And then assuming, even if that's true, they exploited the un-*Mirandized* compelling circumstances interrogation to get consent to search his vehicle."

In isolation, these statements appear to put the *Miranda* issue before the trial court. However, they occurred only after the state had had its opportunity to develop the factual record and after defendant apparently acquiesced in the court's ruling that it was not going to deal with any *Miranda* arguments. Had the state been on notice that defendant intended

to maintain a *Miranda* argument, it is quite possible that the factual record would have developed differently with respect to whether the surrounding circumstances were compelling. We therefore conclude that defendant's belated passing reference to "compelling circumstances" and "un-*Mirandized* compelling circumstances interrogation" did not adequately preserve the issue for appellate review.

Affirmed.