Argued and submitted September 20, affirmed December 1, 2010, petition for review denied April 7, 2011 (350 Or 230)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## FRANCIS ERIC JONES,
aka Francis Jones,
*Defendant-Appellant.*

Multnomah County Circuit Court
080833664; A141466

245 P3d 148

Bear Wilner-Nugent argued the cause and filed the brief for appellant.

Andrew Morgan Lavin argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Anna M. Joyce, Assistant Attorney General.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

BREWER, C. J.

## BREWER, C. J.

Defendant appeals his conviction for possession of cocaine, assigning error to the trial court's denial of his motion to suppress. Defendant argues that his consent to the search of his person by a police officer was obtained in violation of his rights under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. We affirm.

We take the facts from our review of the record, and where the trial court made findings of fact, we are bound by those findings to the extent that they are supported by evidence in the record. *State v. Stevens*, 311 Or 119, 126, 135, 806 P2d 92 (1991). At 1:30 a.m., Sergeant Russick observed defendant riding his bicycle in the wrong direction down a street, in violation of ORS 814.430.[1] Russick also saw that defendant did not have a functioning light on his bicycle, in violation of ORS 815.280.[2] As Russick passed defendant in his police cruiser, Russick noticed that defendant resembled an individual whom Russick knew had a felony warrant out for his arrest, from a wanted flier he had seen at his precinct earlier that evening.

---

[1] ORS 814.430(1) provides:

"A person commits the offense of improper use of lanes by a bicycle if the person is operating a bicycle on a roadway at less than the normal speed of traffic using the roadway at that time and place under the existing conditions and the person does not ride as close as practicable to the right curb or edge of the roadway."

[2] ORS 815.280(2) provides, in part:

"A bicycle is operated in violation of the requirements of this section if any of the following requirements are violated:

"* * * * *

"(c) At the times described in the following, a bicycle or its rider must be equipped with lighting equipment that meets the described requirements:

"(A) The lighting equipment must be used during limited visibility conditions.

"(B) The lighting equipment must show a white light visible from a distance of at least 500 feet to the front of the bicycle.

"(C) The lighting equipment must have a red reflector or lighting device or material of such size or characteristic and so mounted as to be visible from all distances up to 600 feet to the rear when directly in front of lawful lower beams of headlights on a motor vehicle."

Russick intended to issue defendant citations for the traffic violations he had observed, and he also intended to ascertain whether defendant was the wanted subject. He pulled his vehicle alongside defendant, who had already stopped his bike, and activated the vehicle's overhead lights. Russick got out and asked defendant for his identification. Defendant replied that he had none. As he spoke to defendant, Russick detected a strong odor of alcohol on defendant's breath, and he watched as defendant lost his balance, allowing his bike, which he had been straddling, to fall to the ground. According to Russick, defendant was also speaking slowly and had a "dry palate," which, in combination with the odor of alcohol and defendant's loss of balance, made it "obvious" to Russick that defendant "had been drinking and was impaired." Russick testified that although he was "not really trained to do DUII's," and had an assisting officer, Chapman, "who did all DUII's for me," his observations led him to believe that defendant "obviously had been drinking and was impaired."

At that point, Russick also intended to call another officer to retrieve the wanted flier from the precinct so that he could compare the photograph on the flier with defendant's appearance. Before Russick called for a second officer, he asked defendant for consent to search for weapons and contraband. Russick testified that he asked for consent to search for "officer safety" reasons, because he was alone with defendant and was investigating whether defendant was wanted on a felony warrant. Defendant consented to the search, and Russick found the evidence at issue here. Roughly one minute had elapsed between the beginning of the encounter and Russick's request for defendant's consent.

Defendant moved to suppress the evidence that Russick found, arguing that Russick's request for consent to the search had impermissibly extended the duration and scope of the traffic stop. Relying on this court's decision in *State v. Rodgers*, 219 Or App 366, 182 P3d 209 (2008), *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 277 P3d 695 (2010), defendant argued that "the officer is really only permitted to get [defendant's] identifying information and issue a citation. Plainly, he is not permitted to extend the time of the stop in order to execute a search." The state replied that,

consistently with this court's decision in *State v. Amaya*, 176 Or App 35, 29 P3d 1177 (2001), *aff'd*, 336 Or 616, 89 P3d 1163 (2004), ORS 810.410[3] authorized Russick to seek consent to search defendant and that, despite *Rodgers/Kirkeby*, "*Amaya* is still out there."

The trial court denied the motion to suppress:

"The officers clearly had a legal basis to stop the defendant for two traffic infractions, that is riding his bicycle on the wrong side of the road and riding his bicycle without a light during the hours of darkness.

"The Officers were required to ask for the defendant's identification to issue a citation—if they were intended to issue a citation, to do the investigation about that with respect to the traffic infractions. The defendant had no identification to offer, although he certainly did tell * * *

---

[3] ORS 810.410 provides, in part:

"(1) A police officer may arrest or issue a citation to a person for a traffic crime at any place within or outside the jurisdictional authority of the governmental unit by which the police officer is authorized to act as provided by ORS 133.235 and 133.310.

"* * * * *

"(3) A police officer:

"* * * * *

"(b) May stop and detain a person for a traffic violation for the purposes of investigation reasonably related to the traffic violation, identification and issuance of citation.

"(c) May make an inquiry into circumstances arising during the course of a detention and investigation under paragraph (b) of this subsection that give rise to a reasonable suspicion of criminal activity.

"(d) May make an inquiry to ensure the safety of the officer, the person stopped or other persons present, including an inquiry regarding the presence of weapons.

"(e) May request consent to search in relation to the circumstances referred to in paragraph (c) of this subsection or to search for items of evidence otherwise subject to search or seizure under ORS 133.535.

"(f) May use the degree of force reasonably necessary to make the stop and ensure the safety of the peace officer, the person stopped or other persons present.

"(g) May make an arrest of a person as authorized by ORS 133.310(2) if the person is stopped and detained pursuant to the authority of this section."

ORS 814.400 makes all traffic statutes applicable to motor vehicles, including ORS 810.410, also applicable to bicycles, with certain exceptions not at issue here. *See also State v. Turner*, 221 Or App 621, 626, 191 P3d 697 (2008) (applying Article I, section 9, analyses applicable to motor vehicles to a bicyclist).

the Officer his name at the time, and that turned out to be, of course, a correct name.

"Independent of those reasons, while no light and riding on the wrong side of the street, Sergeant Russick obtained a reasonable suspicion that the defendant was riding his bicycle while under the influence of intoxicants, which is a crime in Oregon. * * *

"Separate from those two grounds, the Officer had * * * a reasonable basis to stop the defendant to determine whether or not he was the person * * * who was wanted for the felony crime of Sodomy.

"* * * [A]lthough the defendant certainly is not [the man who was wanted]. Sergeant Russick had a reasonable basis to stop the defendant and make inquiry in that regard. And when the defendant had no identification and had committed the traffic infractions * * * and the Officer had reasonable grounds to believe that he committed the crime of riding under the influence of intoxicants, those in connection with the striking similarity in the photographs between the defendant and [the wanted man] justified the stop on those grounds as well.

"The Officer did not extend the scope of the stop in terms of time and space by asking for consent to search for drugs and weapons. The defendant consented voluntarily to the search. The search was not done without his consent, and that resulted in the discovery of what's purported to be cocaine."

Defendant waived his right to a jury trial and was convicted after a bench trial.

Defendant renews his arguments on appeal, contending that this case is controlled by the Supreme Court's analysis in *Rodgers/Kirkeby*. Defendant relies on the following passage from *Rodgers/Kirkeby*:

"Police authority to perform a traffic stop arises out of the facts that created probable cause to believe that there has been unlawful, noncriminal activity, *viz.*, a traffic infraction. Police authority to detain a motorist dissipates when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed. Other or further conduct by the police, beyond that

reasonably related to the traffic violation, must be *justified* on some basis other than the traffic violation."

*Rodgers/Kirkeby*, 347 Or at 623 (emphasis in the original). Based on that passage, defendant reasons that "Russick's request to search defendant for weapons and drugs was not justified on the basis of any fact developed by that point in the stop," and, thus, "Russick's request for consent to search * * * combined with his show of authority, was an unlawful restraint," rendering defendant's consent to the search ineffective.

In response, the state relies on *Amaya* for the proposition that "Russick was * * * entitled to ask defendant for consent to search in connection with his investigation of defendant for bicycling while under the influence of intoxicants." Moreover, the state asserts, nothing in *Rodgers/Kirkeby* precluded Russick from detaining defendant until he was able to confirm defendant's identity and issue the traffic citations. We agree with the state.

We have already encountered, and rejected, defendant's argument under *Rodgers/Kirkeby*. In *State v. Hall*, 238 Or App 75, 241 P3d 757 (2010), the defendant relied on the same passage from *Rodgers/Kirkeby* on which defendant relies here. In *Hall*, the defendant argued that, under *Rodgers/Kirkeby*, "unrelated investigations that occur during * * * and after * * * the traffic stop * * * must be justified on some basis other than the traffic violation." *Hall*, 238 Or App at 81. We explained that "*Rodgers/Kirkeby* provides no authority for the proposition that police inquiries during an unavoidable lull in a traffic stop must be justified by independent reasonable suspicion." *Id.* at 82. In reaching that conclusion, we noted that the Supreme Court had specifically disclaimed any application of the *Rodgers/Kirkeby* analysis to " 'unrelated police inquiries that occur during the course of the traffic violation investigation,' " so long as those inquiries " 'do not result in any further restriction of movement of the individual,' " *Id.* at 83 (quoting *Rodgers/Kirkeby*, 347 Or at 627 n 5). Finally, we noted that

"neither *Rodgers/Kirkeby* nor our opinion in *Rodgers* actually *holds* anything regarding police inquiries during an unavoidable lull in a traffic stop. In both opinions, any

statements about that subject are *dicta*, because the disputed inquiries in the cases did not occur *during* a lawful stop; they occurred *after* the stop should have ended, and were unlawful for that reason. * * * In [*Amaya*], * * * we *held* that there are no Article I, section 9, implications if an inquiry unrelated to a traffic stop occurs during a routine stop but does not delay it. That proposition remains good law, and that is what occurred in this case."

*Hall*, 238 Or App at 83 (emphasis in original).

■    The reasoning of *Hall* is controlling here. Russick's request for consent to search occurred during an unavoidable lull in an ongoing traffic stop while Russick was attempting to ascertain and confirm defendant's identity. Because, in these circumstances, the request for consent to search did not delay the stop, it was not constitutionally proscribed. Because it was authorized by ORS 810.410, the request did not require independent reasonable suspicion or probable cause. Accordingly, the trial court did not err in denying defendant's motion to suppress.

Affirmed.